# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| **BANK OF AMERICA, N.A.,**<br><br>Plaintiff,<br><br>vs.<br><br>**OLD REPUBLIC INSURANCE COMPANY,**<br><br>Defendant. | Case No.: 03:10-cv-00553-GCM-DSC<br><br>**ORDER GRANTING BANK OF AMERICA, N.A.'S MOTION FOR ADMINISTRATIVE RELIEF FOR A DECLARATION THAT OLD REPUBLIC IS PRECLUDED FROM USING EXTRINSIC EVIDENCE TO ALTER THE POLICY'S TERMS** |

This matter is before the Court upon Plaintiff Bank of America, N.A.'s Motion for Administrative Relief for a Declaration That Old Republic is Precluded From Using Extrinsic Evidence to Alter the Policy's Terms. The motion was fully briefed and heard on February 4, 2014. For the reasons set forth below and on the record, the motion is GRANTED.

## I. BACKGROUND

This lawsuit is a diversity action involving an insurance policy issued by Old Republic Insurance Company ("Old Republic") to Bank of America, N.A. ("Bank of America") to insure certain home equity loans ("HELOANs"). Old Republic issued its T90 Policy (the "Policy") in July 2002 to insure Bank of America on the HELOANs against loss for borrower default. Bank of America now seeks over $279 million in policy benefits arising from more than 4,400 claims.

On June 19, 2012, the Court established a Bellwether Trial Plan, under which Bank of America's claims as to twenty-four bellwether loans would be tried. Additional discovery followed. On August 22, 2013, the Court held a hearing on five motions for partial summary

judgment filed by Bank of America. The Court granted all of Bank of America's motions for partial summary judgment at the hearing, followed by a written order on August 23, 2013.

Of relevance here, the Court granted the Motion for Partial Summary Judgment regarding the Governing Terms of Old Republic's Insurance Policy, including a holding set forth in the Transcript that the Policy consisted of the four-page standard policy form and the accompanying endorsements. The Court also granted the Motion for Partial Summary Judgment on Prohibition on Use of New Information Not Known by the Bank's Underwriters to Deny Coverage.

Trial on the pending bellwether loans was set to begin on November 12, 2013. On the eve of the September 5, 2013, pre-trial conference, Old Republic stated that it would process the remaining seventeen (17) bellwether loans for payment and asserted that its concession would "moot" the trial date. At the Pre-Trial Conference, Bank of America responded that Old Republic's payment would not "moot" the bellwether proceeding, which was intended to resolve the both specific loans and certain legal and evidentiary disputes that applied to the larger loan population. The Bank suggested that further motions be made to resolve evidentiary and legal issues applicable to the remaining loan population, numbering in the thousands. In accordance with the Court's suggestion that these issues be raised through "administrative motions," Bank of America filed the present motion and three others.

The Court heard extensive oral argument on the administrative motions on February 4, 2014. The Court ruled from the bench after hearing oral argument, granting Plaintiff's Motion for Administrative Relief for a Declaration That Old Republic is Precluded From Using Extrinsic Evidence to Alter the Policy's Terms. The Court requested that counsel for Plaintiff prepare a proposed order based upon the Court's rulings in open court, circulate the proposed order to opposing counsel and submit to the Court. Plaintiff complied with the Court's request.

**DISCUSSION**

As a preliminary matter, Defendant objects to the proposed order submitted by Plaintiff, asserting that it usurps the Court's role of explaining its reasoning for its rulings. Defendant's argument is without merit. Courts, including this one, routinely ask prevailing counsel to prepare proposed orders consistent with oral rulings. See e.g., *Simpson v. Amylin Pharm., Inc.*, No. 1:11-CV-301, 2013 WL 1490267 (W.D.N.C. Apr. 11, 2013) (directing counsel for Plaintiff to prepare a proposed order consistent with the court's oral order and largely adopting the proposed order submitted); *Watterson v. Wilkinson*, No. 3:09-CV-394, 2011 WL 810057, *2 (W.D.N.C. Mar. 2, 2011) ("The Court directs that defense counsel prepare a proposed protective order for the Court's signature and serve a copy of the proposed order on the Plaintiff.") *Rudd v. Ikon Partners, LLC*, No. 2:11-CV-00923, 2013 WL 53759, *1 (D. Utah Jan. 3, 2013) ("The Court ordered that counsel for defendant . . . prepare an Order regarding the portion of Defendant's Motions that was granted and ordered that Plaintiffs' counsel prepare an Order for the portion of the Defendants' Motion that was denied."); *Mike v. Prof'l Clinical Lab., Inc.*, 450 F. App'x 732, 735, n. 2 (10th Cir. 2011) ("When a court requests counsel for the prevailing party to prepare a proposed order, or in this case a proposed opinion and order, all parties should be aware of the request and counsel should serve a copy of the proposed opinion and order on opposing counsel no later than when it is submitted to the court.") Such practice in no way requires the Court to surrender its role as arbiter of the dispute. Defendant may rest assured that any Order signed by this Court represents the independent judgment of the Court and is supported by adequate evidence. In addition, the Court finds that all of Defendant's objections to Plaintiff's proposed order are simply without merit.

Old Republic has also complained that Plaintiff's motion is procedurally improper. The Court rejects such argument. It is necessary and appropriate to rule on this motion at this time in

the interest of moving this case towards a final resolution by facilitating the conduct of the trial, particularly as to the arguments that can be made and the evidence that can be introduced.

As noted, this Court previously granted Bank of America's Motion for Partial Summary Adjudication, ruling that "Old Republic may not deny insurance coverage for loan default claims under the T90 insurance policy based on information that was not known to the Bank's underwriters at the time of loan origination." (Docket No. 263). Through its present motion, and consistent with the ruling on partial summary judgment, Bank of America seeks an order declaring that (1) Old Republic cannot deny coverage based on a purported borrower misrepresentation that was unknown to Bank of America at origination; and (2) Old Republic may not resort to extrinsic evidence to alter the unambiguous language of the T90 Policy ("the Policy"). Old Republic opposes the motion, arguing that the Policy requires compliance with objective credit criteria regardless of the existence of any borrower misrepresentation. Old Republic also argues that the Policy is not a fully integrated agreement and that extrinsic evidence, in the form of (1) a 2006 Term Sheet, (2) the parties' course of dealing and (3) custom and practice in the industry, is admissible either to construe the Policy or to supplement the Policy with additional consistent terms.

Under North Carolina law, if "the terms of [a] policy are plain, unambiguous and susceptible of only one reasonable construction, courts will enforce the contract according to its terms." *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg,* 472 F.3d 99, 115 (4th Cir. 2004); *Register v. White*, 358 N.C. 691, 695, 559 S.E.2d 549, 553 (N.C. 2004). "Courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Patel v. Scottsdale Ins. Co.,* 728 S.E.2d 394, 398 (N.C. Ct. App. 2012). The Court

4

finds that the Policy herein is unambiguous as to those relevant provisions.  The Policy at issue here does not exclude coverage in the event of borrower or third-party fraud, does not contain any representation or warranty that all insured loans objectively met certain underwriting criteria, and does not include any language imputing the statements of borrowers and/or third parties to Bank of America.

Old Republic acknowledges that the Policy does not allow it to deny coverage based solely on information unknown to Bank of America at the time origination, including purported borrower misrepresentations.  Nevertheless, and despite the Court's prior ruling (Docket No. 263), Old Republic contends that it still has the right to rescind coverage and/or deny claims based on a purported violation of Old Republic's Sanctioned Guidelines.  In support of that assertion, Old Republic maintains that, if it can show that the "actual" information about the borrower, as developed through after-the-fact investigations or based on information outside the loan file, takes the loan outside of certain agreed-upon underwriting criteria, it may rescind coverage for the loan or deny a claim even if that information was not required, or not required to be verified by Old Republic's Sanctioned Guidelines.  Moreover, Old Republic also contends that the relief sought by Bank of America would preclude Old Republic from denying coverage if the loan was an unreasonable credit risk.  In support of this position, Old Republic asserts that the Sanctioned Guidelines require compliance with objective credit criteria regardless of the existence of any third-party misrepresentation.  Specifically, Old Republic contends that the insuring grant of the Policy provides for coverage against Loss arising from default by a borrower in the repayment of Loans evidenced by "Eligible Notes," and that an "Eligible Note" must strictly comply with the agreed-upon credit criteria contained in the Sanctioned Guidelines.  However, these arguments are inconsistent with the Policy.

Under North Carolina law, Old Republic, as the drafter of the Policy, must clearly state any conditions, exclusions or other coverage limitations. Consequently, all limitations on coverage, such as exclusions, must be clearly expressed or the terms of the Policy will be construed in favor of coverage. *See Herring v. Liner,* 163 N.C. App. 534, 538, 594 S.E.2d 117, 120 (2004); *New South Insurance v. Kidd,* 114 N.C. App. 749, 753-55, 443 S.E.2d 85, 88 (1994). The only provision in the Policy that addresses fraud or misrepresentation is Provisions and Stipulation 10. There is no comparable provision for borrower or third-party misrepresentation. If Old Republic intended to place the risk of misrepresentation on the policyholder (here, Bank of America), then it could have provided expressly for that in the Policy or otherwise expressly excluded it from coverage. *Halter v. J.C. Penney Life. Ins. Co.,* 1:98-cv-938, 1999 U.S. Dist. LEXIS 21386, *4-5 (M.D.N.C. Nov. 30, 1999). It did not, and there is no principle of construction that permits redrafting of the Policy after the fact.

Accordingly, this Court again concludes that Old Republic cannot deny coverage based on a purported borrower misrepresentation, third-party misrepresentation, or any other information unknown to Bank of America at the time of origination. Nor can Old Republic attempt to show that a borrower was not a reasonable credit risk based on information outside the loan file, or based on information that was not known to Bank of America or required to be verified by Bank of America under the Sanctioned Guidelines. *Whether a loan was an unreasonable credit risk based on information available to the Bank when the loan was underwritten is a different inquiry that is not relevant to the present motion.*

Old Republic also argues that the Policy is not a fully integrated agreement and thus, extrinsic evidence (as noted, the 2006 Term Sheet, industry custom or practice or the parties' course of dealing) is admissible to construe and/or add "consistent" terms to the Policy. Old

6

Republic contends the 2006 Term Sheet is a separate contract between Bank of America and Old Republic by which Bank of America gave a representation and warranty that "all insured loans separately and collectively meet the previously approved and sanctioned program credit guidelines and underwriting criteria." Old Republic further contends that because the 2006 Term Sheet involves "the same subject matter" as the Policy, the two documents must be construed together. As far as industry custom or practice, Old Republic contends that it is entitled to offer expert testimony about the relative ability of the lender and the credit insurer to detect "red flags" or possible misrepresentations on a loan application to determine whether Bank of America discharged its obligations under Provision & Stipulation 2. It also argues that the parties' purported course of dealings show that Bank of America was responsible for the accuracy of all information used in underwriting, including the information stated in the borrower's loan application.

First, the Court rejects Old Republic's argument that the Policy is not fully integrated. It is well established under North Carolina law that written agreements are presumed to be fully integrated with respect to the terms they contain. *Neal v. Marrone,* 239 N.C. 73, 77, 79 S.E.2d 239, 242 (N.C. 1953); *Root v. Allstate Ins. Co.,* 272 N.C. 580, 587, 158 S.E.2d 829, 835 (N.C. 1968). That is particularly true where a contract contains an integration clause, as the Policy does here. *Melvin v. Principi,* No. 5:03-cv-968-FL, 2004 U.S. Dist. LEXIS 28464 at *18 (E.D.N.C. Dec. 2, 2004).[1] The Court finds that the Policy is a fully integrated contract and was intended to be a complete and exclusive statement of all the terms of the parties' agreement.

Consistent with this finding, the Court also rejects Old Republic's argument that it may refer to extrinsic evidence (including but not limited to the 2006 Term Sheet, industry custom or

---

[1] In *FDIC v. Old Republic Ins. Co.,* No. 1:11-CV-371, 2012 WL 1309245 (N.D. Ohio, April 16, 2012), the United States District Court for the Northern District of Ohio held that this same form policy (the T90 policy) contained an integration or merger clause, limited additions to the policy through endorsements, and was fully integrated.

7

practice, or the parties' course of dealing) in order to construe the Policy, add additional "consistent" terms to the Policy, or otherwise alter the unambiguous terms of the Policy. It is well established that extrinsic evidence is inadmissible to alter the terms of a fully integrated and unambiguous agreement. *First-Citizens Bank & Trust Co. v. 4325 Park Road Assoc., Ltd.*, 133 N.C. App. 153, 156, 515 S.E.2d 51, 54 (N.C. Ct. App. 1999). Also, North Carolina law does not permit a party to alter a Policy's allocation of the risk of borrower fraud by relying on a document (here, the 2006 Term Sheet) that was unilaterally drafted years after the Policy was issued. To allow such a result would be inconsistent with North Carolina's fundamental insurance principles. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.,* 276 N.C. 348, 354, 172 S.E.2d 518, 522 (N.C. 1970).

Further, as to industry custom and usage evidence, North Carolina law is well established:

> A custom or usage may be proved in explanation and qualification of the terms of a contract which otherwise would be ambiguous, … but evidence of a usage or custom is never admitted to make a new contract or to add a new element to one previously made.

*E.L. Roofing Co. v. State*, 82 N.C. App. 216, 223, 346 S.E.2d 515, 520 (1986) (quoting *Lester Bros., Inc. v. J.M. Thompson*, 261 N.C. 210, 218, 134 S.E.2d 372, 378 (1964). Similarly, Old Republic's attempt to alter the unambiguous policy by the parties' purported course of dealing fails under North Carolina law. See *Hickory Orthopaedic Centers, P.A. v. Nicks*, 179 N.C. App. 281, 289, 633 S.E.2d 831, 836 (2006).

Nor does the 2006 Term Sheet constitute a valid amendment to the Policy. By its terms, the Policy may only be amended as follows:

> Amendments to this Policy may be made only after written approval by the Company and only by an endorsement signed on behalf of the Company by its President, Vice President, or Secretary, and countersigned by a duly authorized representative of the Company.

8

T90 Policy, Provision & Stipulation 9, as amended by endorsement effective July 1, 2002. The 2006 Term Sheet is not an "endorsement" and does not otherwise comply with P&S 9, as amended.

Even if the Court accepted Old Republic's argument that the Policy is a partially integrated contract, Old Republic's argument still would fail. First, although Old Republic characterizes the 2006 Term Sheet as a binding contract between it and Bank of America, it is not. By its terms, the 2006 Term Sheet is a "proposal" signed by Bank of America and an entity called "Old Republic Insured Credit Services, Inc." that was required to be submitted "to the carrier for final approval and policy execution." The 2006 Term Sheet does not suggest any intent to bind Bank of America and Old Republic to an enforceable agreement. *See, e.g., Cobra Capital, LLC v. RF Nitro Commc'ns, Inc.*, 266 F. Supp. 2d 432, 437 (M.D.N.C. 2003) (finding that proposal's express terms, including description of document as a "proposal" and statement that its terms were "subject to the approval" of plaintiff, demonstrated that it was not intended by the parties to be a binding contract). Second, the term that Old Republic is attempting to add to the Policy through the use of this and other extrinsic evidence – a representation and warranty as to the objective accuracy of all information used in underwriting – is inconsistent with the unambiguous language of the Policy itself. Thus, Old Republic is not attempting to add a "consistent additional term" to the Policy. Rather, it is attempting fundamentally to re-write the Policy's allocation of risk through the introduction of extrinsic evidence. This argument is contrary to North Carolina law.

## II. <u>ORDER</u>

Based on the arguments presented in open court and documents submitted into the record, and the reasons articulated above and for good cause shown, the motion is hereby GRANTED and it is HEREBY ORDERED that (1) Old Republic cannot deny coverage based on a purported

borrower misrepresentation that was not known to Bank of America's underwriters at the time of origination; *and* (2) Old Republic cannot use extrinsic evidence of the 2006 Term Sheet, industry custom or usage or course of conduct of the parties to alter the unambiguous terms of the Policy.

IT IS SO ORDERED.

Signed: March 6, 2014

Graham C. Mullen
United States District Judge